MadbeN, Judge,
delivered the opinion of the court:
The plaintiff sues for the difference between the pay which he received as a private in the Army, from June 24, 1943, to October 15, 1945, and the amount which he would have received for that time as a first lieutenant. He claims the pay of a first lieutenant because, he says, the commission which he had formerly held in that rank had not been validly terminated.
The plaintiff was, from 1931 to 1940, a member of the Officers Reserve Corps, having been a second lieutenant until 1935 and a first lieutenant thereafter. On October 26,1940, *674 be received his third appointment to a five-year terms as a Reserve Officer. During those years he was called to active duty for only the usual two-week summer encampments.
On December 2, 1940, the plaintiff was ordered to active duty pursuant to the Act of August 27,1940. He first served for some seven months in Company B of the 84th Battalion, and then commanded Company C of that Battalion for two and one-half months. Then he was transferred, on August 29,1941, to Company C, 22nd Quartermaster Regiment. In this position he had strained relations with the colonel who was the Executive Officer of the Sixth Army Corps, and was in charge of administration and operations. On October 2, 1941, four of the plaintiff’s superior officers conferred, and the colonel advised the captain who was the plaintiff’s immediate superior to secure the plaintiff’s resignation from the Army, since, if he did not resign, reclassification proceedings would be instituted. The captain so advised the plaintiff on October 3. On that 'day the plaintiff wrote and gave to the captain an unqualified resignation of his commission. The captain indorsed it with the word “Approved” and his signature; the major who was next in command indorsed it “forwarded”; and the plaintiff delivered it to Battalion Headquarters.
On October 4 the plaintiff orally indicated to the captain and the major that he was going to withdraw his resignation. On October 7 he was ordered to take a final-type physical examination of the kind that one takes when leaving the Army, and he took the examination on October 8. On October 9 he submitted a formal and unqualified withdrawal of his resignation.
After the plaintiff had on October 4 orally indicated to his superiors that he intended to withdraw his resignation, and they so reported to their superiors, they were advised that their indorsements were incomplete, and the simple indorsements were torn off and new ones were pasted on the plaintiff’s resignation. The new indorsements stated that the plaintiff had been advised that he would be recommended for reclassification, and that his resignation was voluntary. The modification of the indorsements was to make them comply with the Reclassification Regulation, *675 which was A. E. 605-230 and which provided that any officer who had been notified that he was going to be recommended for reclassification would be permitted to resign under A. E. 605-275, and said:
The letter of resignation and the first indorsement will clearly indicate that such action is voluntary on the part of the officer.
The Eeclassification Eegulation then in force also said:
The officers resigning under the provisions of this paragraph are not entitled to a certificate of service.
The last-quoted provision would have made any officer who was not in serious difficulties hesitate to present a resignation intended to be in lieu of reclassification. When the plaintiff’s superiors were changing the indorsements on his resignation, to make them comply with the Eegulation relating to a resignation in lieu of reclassification, it would seem that they would have wanted to make sure that they had, from the plaintiff, that kind of a resignation. On its face it did not comply with the Eegulation that it “clearly indicate” that it was voluntary. In view of the serious consequence to the officer who had had ten years of honorable membership in the Eeserve Corps, we think his superiors had no right to try to prevent his withdrawal of his resignation by construing it as something which, on its face, it was not.
The plaintiff’s superiors paid no attention to his withdrawal, on October 9, of his resignation. The applicable Eegulation (A. E. 605-275) at that time provided that a resignation was revocable at any time before acceptance, except in the case of a resignation to which a condition was attached “as for the good of the service.” A resignation in lieu of reclassification is in no sense comparable to a resignation “for the good of the service”. When that expression was defined in a 1944 amendment to A. E. 605-275, the definition was:
4. Eesignation for good of service.- — a. An officer whose conduct has rendered him triable by court martial for an offense punishable by dismissal may tender his resignation for the good of the service in lieu of trial by court martial, using Form C * * *.
*676 Form C required the soldier to recognize that the discharge would be considered as under other than honorable conditions, and that he would forfeit mustering-out pay, accrued leave, and all rights based upon his period of service.
Paragraph 3 of the same 1944 amendments, relating to resignation in lieu of reclassification, provided that even if the recommended reclassification was based on factors over which the officer had control, such as drunkenness or laziness, his separation would “not be considered for the good of the service.”
The reclassification procedure did not contemplate that it would often result in dismissal. Paragraph 1 of A. R. 605-230 provided that—
The purpose of these regulations is to save to the service the commissioned manpower of the Nation where such services can be utilized to the advantage of the Government, and to provide a means of eliminating those who are found unsuitable.
Paragraph 2 provided:
Reclassification of an officer is necessary when it is found, that there has been a lowering of efficiency, an error in assignment, or when it is believed that his retention in the service is undesirable. Reclassification embraces those procedures necessary to place the individual in the proper assignment, or to separate him from the service.
The Government’s attempt to, assimilate the plaintiff’s resignation to one “for the good of the service” and thus make it irrevocable is not sound. Indeed, we feel fairly certain that if the plaintiff’s superiors had recognized the withdrawal of his resignation, as they should have, and initiated their contemplated reclassification proceeding, the Reclassification Board would have found some useful place in the Army for an officer who had held a commission for ten years and who was, as we have found, an honest, honorable, and loyal officer. There are many positions less trying than the chaperoning of GI. truck drivers.
The Government says that the plaintiff’s service as a Reserve Officer on active duty was terminable a/t the pleasure of the President, and that, since it could have been so termi *677 nated, be has not been harmed by its termination by action on his resignation. The answer, of course, is that his service was not terminated by the President. It was attempted to be terminated by his superiors on the basis of his resignation, after his resignation had been validly withdrawn.
The Government urges that the plaintiff has been guilty of laches. We think not. He sought relief in the War Department, was drafted into the Army as a private, and served honorably. He claims an officer’s pay only for the period of his actual military service, which ended in 1945. The Government has not been prejudiced by his delay in bringing suit.
The plaintiff is entitled to recover. Entry of judgment will be suspended to await the filing of a report from the General Accounting Office showing the amount due.
It is so ordered.
Whitaker, Judge; LittletoN, Judge; and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court, on January 5,1954, having considered the evidence, the report of Commissioner Marion T. Bennett, and the briefs and argument of counsel, made findings of fact as follows:
1. The plaintiff is a citizen of the United States. His legal residence is Boston, Massachusetts, and his local residence is Washington, D. C.
2. On March 14, 1931, the plaintiff accepted an appointment as a second lieutenant, Quartermaster Reserve, in the Officers Reserve Corps. This commission was terminated upon the plaintiff’s appointment and qualifications on October 26,1935, as a first lieutenant in the Officers Reserve Corps for a term of five years. On October 26, 1940, the plaintiff was reappointed for a period of five years as a first lieutenant, and the certificate of his new commission provided in part as follows:
* * * And he [plaintiff] is to observe and follow such orders and directions, from time to time, as he shall receive from me, or the future President of the United *678 States of America, or the General or other Superior Officers set over him, according to the rules and discipline of War.
This commission evidences an appointment in the Army of the United States, under the provisions of Section 37, National Defense Act, as amended, and is to continue in force for a period of five years from the date above specified [October 26, 1940], and during the pleasure of the President of the United States, for the time being.
Between March 14,1981, and December 1940, the plaintiff served the following periods on active duty: July 17, 1932 to July 30,1932; August 5,1934- to August 18,1934; July 19, 1936 to August 1,1936: July 11, 1937 to July 24,1937: July 7,1940 to July 20,1940.
3. By direction of the President under authority contained in Public Resolution No. 96,76th Congress, approved August 27, 1940, the plaintiff was ordered to active duty effective December 2, 1940. This order provided in part as follows:
On that date [December 2, 1940] he [plaintiff] will proceed without delay from his home to Fort Devens, Mass., reporting in person upon arrival to the Commanding Officer for extended active duty with Company “B”, 84th QM Battalion. * * *
If not sooner relieved, this reserve officer will return to his home from such place as he may be on duty, in time to arrive thereat on December 1, 1941, on which date he will revert to inactive status.
The plaintiff served with Company “B”, 84th Quartermaster Battalion, under Lieutenant Knight, its Commanding Officer, until July 9, 1941, when he was transferred to Company “C”, 84th Battalion. Lieutenant Knight had requested that the plaintiff be transferred out of his command. Upon this transfer, the plaintiff, as ranking officer, was made Commanding Officer of Company “C”. On August 29,1941, he was relieved of that command and transferred to Company “C”, 22nd Quartermaster Regiment.
4. Company “C” of the 22nd Quartermaster Regiment was attached to the 84th Quartermaster Battalion for administration. Both units were part of the Sixth Army Corps, which, in the summer of 1941, was stationed at Fort Devens, Massachusetts, in the First Corps Area. The Commanding *679 Officer of the 84th Quartermaster Battalion was Major Lewis E. W. Lepper. The Battalion Adjutant was Second Lieutenant Arnott K. Vanderburgh and the Commanding Officer of Company “C”, 22nd Quartermaster Regiment, was Captain Stanley S. Merrell.
5. Company “C” of the 22nd Quartermaster Regiment was a truck company whose enlisted personnel were colored troops. The section of Company “C” under the command of the plaintiff, a platoon lieutenant, went to a maneuver area, under orders, the latter part of September 1941, in advance of the company. He had under his command about 40 men, which constituted approximately 40 percent of the company’s complement, and about 18 or 20 trucks which transported some of its equipment. The plaintiff arrived at the maneuver area about September 19, 1941, and Captain Merrell with the rest of the company arrived on October 2,1941.
6. On the day before the plaintiff left Fort Devens for the maneuver area, he was instructed to be ready to move out with his advance section the following morning at seven a. m. Captain Merrell thought the men might not get off on time, so shortly after six a. m. he went to the company area to check. Upon finding no activity in the area, Captain Merrell had his first sergeant organize the convoy, consisting of 18 or 20 trucks, and sent someone to locate the plaintiff. The plaintiff arrived about an hour later when the convoy was almost ready to move out.
7. When Captain Merrell arrived at the maneuver area on October 2, 1941, with the balance of Company “C,” he first moved his trucks into the bivouac area, where the advance section of his company was located, and then went to the headquarters of the 84th Quartermaster Battalion to report and meet the other officers. When he reported, Colonel John Holt, Corps Quartermaster, Lieutenant Colonel R. W. Whitman, executive officer, and Major Lepper were present. CoJonel Whitman brought up the question of plaintiff’s performance of his duties and wanted to know why the advance section had been sent in charge of the plaintiff. Captain Merrell advised him that the plaintiff was the only officer available. Colonel Whitman then commented on the diffi *680 culty he had with the plaintiff in getting trucks to designated places on time, on the way the plaintiff maintained his bivouac area, on unsatisfactory discipline among his men, and on other instances of poor performance of his duties. Colonel Whitman said that the situation regarding the plaintiff had reached a climax, because of delinquencies in his operations as an officer and that a resignation would have to be secured from the plaintiff for his own good, otherwise the situation demanded that he be reclassified. All three officers were agreed on the procedure Captain Merrell should take and he was ordered to get plaintiff’s resignation or have him reclassified. Under Army regulations a recommendation for reclassification could be oral or written.
The plaintiff’s superior officers, in good faith, considered that plaintiff was so inefficient and his performance so unsatisfactory as to justify or require the institution of reclassification proceedings unless he resigned. The plaintiff was an honest, patriotic, and honorable officer.
8. At eight o’clock on the morning of October 3,1941, following his talk with the other officers, Captain Merrell saw and talked with the plaintiff. He told him about the conference he had with the three officers the day before and advised the plaintiff of the order that he would have to resign or reclassification proceedings would be started against him. He also told him of the difficulties which Colonel Holt and Colonel Whitman had mentioned during the conference, and of the difficulties he personally had with the plaintiff in the matter of the performance of his duties.
9. After advising Captain Merrell he thought he should resign, the plaintiff personally typed out the following unqualified resignation, dated October 3, 1941, on a single sheet of letter-size paper, using the top half of the page and making several copies:
1. I hereby tender my resignation as a First Lieutenant in the Officers Reserve Corps, and request that I be relieved from duty as a Commissioned Officer with the Army of the United States.
Below the resignation the plaintiff typed a first endorsement for the signature of Captain Merrell, Commander of Company “C”, as follows: “Approved”. Immediately below *681 the first endorsement be typed a second one for the signature of Major Lepper, Commander of tbe 84th Quartermaster Battalion, as follows: “Forwarded”. There is no evidence that the plaintiff was authorized or directed to type these endorsements for the signatures of Captain Merrell or Major Lepper.
Defendant’s Eshibit No. 1 is the carbon copy of the resignation which the plaintiff kept for his files. He removed this copy from the typewriter before he typed the first and second endorsements on the original and other copies. There is no copy of the lower half of the page on which these two original endorsements appeared, since they were torn off and destroyed and new endorsements substituted therefor, as hereinafter set forth.
10. When the plaintiff returned with his signed resignation, Captain Merrell signed the first endorsement “Approved”. Thereupon the plaintiff delivered it to battalion headquarters. On October 6, 1941, Captain Merrell was advised by the battalion adjutant that the first endorsement which he had signed was incorrect. The captain had no previous experience with the resignation of officers and did not know the requirements of the regulations when he talked to the plaintiff on October 3, 1941. The two previous endorsements were torn off and a new first endorsement, typed out and signed by Captain Merrell, was pasted on. It was dated October 6,1941, but was made on October 9, and read as follows:
This officer has been notified that he has been recommended for reclassification. This resignation is voluntary and unconditional.
At the same time, the following new second endorsement dated October 6, 1941, was prepared in the office of the Battalion Adjutant for the signature of the Battalion Commander, Major Lepper, who signed it. This endorsement stated:
1. Approved.
2. This officer was notified that he would be recommended for reclassification.
3. Resignation is entirely voluntary on the part of the officer concerned.
*682 4. Officer has completed (10 months) and (5/30) months’ service on extended active duty.
5. Officer is neither responsible nor accountable for public property or funds.
6. Home address: 432 Blue Hill Avenue, Roxbury, Massachusetts.
7. Officer has 16 days accrued leave.
8. Officer has passed final type physical examination.
11. On October 4, 1941, the plaintiff orally indicated to Major Lepper and Captain Merrell that he was going to withdrawn his resignation. On October 7,1941, the plaintiff was ordered to take a final-type physical examination the following day. This is the type of physical examination taken upon admission to the Armed Forces or upon termination of one’s services in the Armed Forces. The plaintiff took this physical examination, as ordered, at Fort Bragg.
12. On October 9,1941, the plaintiff submitted the following withdrawal of his resignation to the Adjutant of the 84th Quartermaster Battalion and mailed a signed duplicate copy to The Adjutant General, Washington, D. C., with a covering letter of transmittal. On that day the plaintiff was senior officer on duty at the bivouac of Company “C”. The withdrawal read as follows:
1. The undersigned hereby withdraws his letter of resignation and request for relief from active duty submitted on October 3, 1941.
13. On October 22,1941, the First Corps Area issued Special Order No. 248. Paragraph 35 provided in part as follows:
35. PIRST LIEUTENANT ISADORE APPELL, 0-283039, QMC now on extended active duty with Company “C”, 22nd Quartermaster Regiment (Trk), Norman, North Carolina * * * is relieved from further active duty in time to enable him to arrive at his home, 490 Blue Hill Avenue, Roxbury, Mass., by midnight, November 11, 1941, at which time he will revert to inactive status.
On October 25, 1941, Special Order No. 41 was issued by the 84th Quartermaster Battalion Headquarters granting the plaintiff 16 days’ leave, effective that day. The First Corps Area had ordered that the plaintiff be put on leave because his resignation was in lieu of reclassification.
*683 Subsequent to receipt of this information, the plaintiff sent the following undated telegram to the First Corps Area:
UNDERSIGNED THIS DAT RECEIVED S. 0. 41, 84TH QM BATTALION GRANTING HIM SIXTEEN DATS LEAVE BEGINNING OCTOBER TWENTT EIVE.
THIS DAT INFORMED OE RADIOGRAM HEADQUARTERS EIRST CORPS AREA BASED ON RESIGNATION OE UNDERSIGNED DATED OCTOBER THIRD, 1941.
TUTS RESIGNATION WITHDRAWN OCTOBER EOURTH AND WITHDRAWAL CONFIRMED IN WRITING OCTOBER NINTH.
RESIGNATION WAS NOT INTENDED AS RESIGNATION UNDER AR 605-2 3 0, IS NOT VOLUNTARE AND NOT NOW DESIRED.
REQUEST THAT ORDER GRANTING LEAVE BE CANCELLED AND ANT ORDERS BASED ON RESIGNATION OE OCTOBER THREE RESCINDED.
PLEASE ADVISE IE FURTHER WITHDRAWAL OE RESIGNATION NECESSART.
On October 30,1941, the plaintiff requested that the order granting him leave for 16 days be revoked because he had not taken advantage of it. On November 3, 1941, Special Order No. 46 was issued by the 84th Quartermaster Battalion Headquarters granting the plaintiff 6 days’ leave instead of 16.
14. On October 29,1941, The Adjutant General purported to accept plaintiff’s resignation as of November 12, 1941, in a communication to the plaintiff as follows:
1. Your resignation as First Lieutenant, Quartermaster Corps Beserve, Army of the United States, contained in your letter dated October 3, 1941, Norman, North Carolina, is hereby accepted, by direction of the President, to take effect November 12, 1941, under honorable conditions.
2. Kindly acknowledge receipt of this notice on the inclosed A. G. O. Form 701, supplying signature, place and date in the spaces provided therefor.
15. On November 10, 1941, the plaintiff sent a telegram to The Adjutant General in Washington, D. C., requesting “reconsideration of acceptance of my resignation dated October 3, 1941.” In this telegram he claimed that his “resignation was submitted under pressure and was not voluntary.” The plaintiff was notified by The Adjutant General that his *684 telegram bad been endorsed to the proper command station for appropriate action. The plaintiff then received the following communication dated November 25, 1941, from the Assistant Adjutant General:
The. resignation of Lieutenant Isadore Appell was investigated by the Inspector General, VI Army Corps, who found that the officer concerned, when notified that he was to be reclassified, voluntarily submitted his resignation and that such resignation was in no way due to pressure except that which resulted from notice of reclassification.
16. Army regulation 605-230 on reclassification, was originally issued on January 22, 1941. Prior to issuance of this regulation the reclassification of commissioned officers was not governed by regulation, bulletin, or circular of the Army. Eegulation 605-230, as issued on January 22, 1941, did not contain any provision for resignations in lieu of reclassification. On June 7,1941, the regulation was revised so as to include the following:
14. Resignations.—Any officer of any component recommended for reclassification will be permitted to submit his resignation under the provisions set forth in AR 605-275 for officers of the Regular Army. Forwarding indorsements will clearly indicate that such action is voluntary on the part of the officer; that he has been recommended for reclassification; and that reassignment is not recommended. If the resignation is submitted while under investigation for misconduct the forwarding indorsement will so state.
On August 25, 1941, the above-quoted provision was changed and renumbered to read in part as follows:
12. Resignations.—a. Any officer of any reserve component who has been recommended for reclassification, or who has been notified either orally or in writing that he is going to be recommended for reclassification, will be permitted to submit his resignation under the provisions set forth in AR 605-275 for officers of the Regular Army. The letter of resignation and the first in-dorsement will clearly indicate that such action is voluntary on the part of the officer. The first indorsement will also clearly indicate that the officer has been notified that he will be recommended for reclassification.
* * * * *
*685 d. The officers resigning under the provisions of this paragraph are not entitled to a certificate of service.
On October 9, 1941, the above provisions were further amended by letter of The Adjutant General, subsequently embodied in Circular 225 of October 24,1941, as follows:
12. a. Any officer of any Eeserve component who has been recommended for reclassification, or who has been notified either orally or in writing that he is going to be recommended for reclassification, will be permitted to submit his resignation under the provisions set forth in AE 605-275 for officers of the Eegular Army. The letter of resignation and the first indorsement will clearly indicate that such action is voluntary on the part of the officer. The first indorsement will also clearly indicate that the officer has been notified that he will be recommended for reclassification. Where misconduct or undesirable habits or traits of character are involved, the nature of such will be stated and the officer will be informed that the War Department will record his separation as under other than honorable conditions.
* * * * *
(d) (1)An officer resigning under the provisions of this paragraph as a result of misconduct or undesirable habits or traits of character is considered as being separated from the service under conditions other than honorable and is not entitled to a certificate of service.
An officer resigning under the provisions of this paragraph who has displayed attributes of character and devotion to duty which characterize his service as honest and faithful, or who is subject to reclassification solely because of lack of technical military proficiency, is considered as being separated under honorable conditions and is entitled to a certificate of service.
17. On October 31, 1941, The Adjutant General notified the plaintiff in writing of the foregoing amendment to the regulations. The plaintiff requested a certificate of service and, as a result, one showing honorable service was issued to the plaintiff in January 1942.
18. The last period for which the plaintiff could be rated for efficiency, before his resignation became effective, was the period between August 30, 1941, and November 11, 1941. An efficiency report covering this period was made by Captain Merrell on December 23, 1941, after the plaintiff had been separated from the Army. The plaintiff was given an *686 efficiency rating of “Satisfactory.” Under remarks, Captain Merrell stated, “In comparing this officer with all officers of his grade and component known to me I would place him in the lower third. He is acceptable in his present grade.”
This efficiency report shows that the plaintiff was in the lowest bracket in which he could be reported without being unsatisfactory. It is the custom of the Army, when an officer is being separated without prejudice, to give him the lowest rating possible without placing him in the “Unsatisfactory” classification. Since the plaintiff resigned in lieu of reclassification, it was normal Army procedure to give him an efficiency rating that would not prejudice him. An efficiency rating of “Satisfactory”, in the lower third of other officers of his grade and component, is not a recommendation that the officer be retained in the service, and is not an indication that his manner of performance may not, in fact, be unsatisfactory. The statement that the plaintiff was “acceptable in his present grade” was not a recommendation for promotion or for retention in the service. Such an efficiency report is not inconsistent with the fact that plaintiff’s performance was unsatisfactory and that he was going to be reclassified.
19. On October 3, 1941, when the plaintiff submitted his resignation, and on October 9, 1941, when he submitted a written revocation of the resignation, War Department Regulation 605-275 of September 25,1928, contained the following provisions:
c. A mere offer to resign or to tender resignation is revocable at any time before acceptance. An exception to this rule arises in the case of resignations to which conditions or qualifications are attached, such as “for the good of the service,” in which instances the privilege of withdrawing a proffered resignation may be denied by the authority competent to accept it. After acceptance and before effect has been given to the same by notice, an offer cannot be withdrawn or materially modified solely by the person concerned; the consent of the appointing power is necessary.
d. The acceptance of a resignation is an Executive Act which may be exercised by the President through any proper officer selected by him as by a military commander in the field in time of war.
*687 On November 9, 1944, this regulation was revised so as to contain the following provisions:
2. Unqualiñed resignation. — a. Any officer of the Army in whatever duty status may tender his resignation whenever he considers such action appropriate. The resignation will be tendered in letter form, will be unconditional, will contain a complete statement of the reasons for which submitted, and will have appended thereto available documentary evidence tending to substantiate any of the given reasons.
b. The tender of an unconditional resignation may be withdrawn at any time before acceptance. After acceptance and before effect has been given to the same by notice to the officer concerned, as provided by these regulations, a resignation cannot be withdrawn or materially modified without the consent of the War Department.
c. An unconditional resignation, if accepted by the War Department, will be accepted under honorable conditions. The officer will be furnished a certificate of service and will be granted accrued leave, when practicable, as provided in AE 605-115.
3. Eesignation in lieu of reclassification. — a. An officer who has been recommended for reclassification under the provisions of AE 605-230 may tender his resignation at any time prior to final action by the War Department on the reclassification proceedings.
% ijc * sj: *
e. A resignation tendered in lieu of reclassification may be withdrawn only with the consent of the War Department. Normally such consent will not be given.
20. The evidence does not establish any administrative practice or custom of the service in conflict with the regulations quoted in these findings.
21. The plaintiff’s active duty under his commission was terminated November 11,1941. On June 10,1943, the plaintiff was inducted into the Army as a private and placed on duty on June 24, 1943. He served in the Army from that date until October 15, 1945, when he was honorably discharged.
22. On June 12,1942, the plaintiff wrote to The Adjutant General, Washington, D. C., seeking clarification of his status, objecting to the acceptance of his resignation and *688 requesting an opportunity to render military service. The plaintiff submitted a request on May 19,1943, that his official record and status be amended. These requests were not granted.
23. On November 11, 1943, the plaintiff filed a nonwaiver of officer’s pay and allowance, reading as follows:
I am accepting all payments together with additional allotments for dependents without waiving any rights or denying any claim I have for pay and allowances as a commissioned officer in the third pay grade, plus 20% additional for four periods of longevity dating from 14 March 1931, inasmuch as I claim my commission dated 26 October 1940 has never been terminated and I am legally serving in such status since 24 June 1943.
On April 6, 1945, the plaintiff requested permission to serve in a grade commensurate with his civilian and military education without waiving claim to the commission issued on October 26, 1940. This was not permitted.
24. On May 17, 1946, after his discharge, the plaintiff requested a review of his case. When this was denied the plaintiff requested a hearing and action by a Board in accordance with Section 207 of the Legislative Reorganization Act of 1946. Thereafter, the plaintiff filed application for correction, which was denied without hearing on March 30, 1948, “on the ground of insufficient basis for review and inability to grant the relief.” The plaintiff has actively pursued all administrative remedies and exhausted the same.
25. The plaintiff here claims the difference between the compensation and allowances he received as a private between June 24,1943, (the date of his induction) and October 15, 1945, (the date of his discharge) and the amount he would have received as a first lieutenant, subject to computation by the General Accounting Office.